******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEVLIN, J., concurring in the judgment. I agree with parts I, and II B and C of the majority opinion, as well as that portion of part II A discussing the prosecutor's questions regarding the defendant's remorse. I write separately because I believe that the prosecutor's default on his express commitment not to inquire as to the defendant's postarrest assertion of his *Miranda*[1] rights amounted to prosecutorial impropriety. I do not, however, believe that this impropriety deprived the defendant of his due process right to a fair trial and therefore agree that the judgment should be affirmed.

The relevant factual and procedural history are aptly stated in the majority opinion. The defendant, John Pjura, was arrested and charged, inter alia, with assault in the second degree in violation of General Statutes § 53a-60 (a) (1) for allegedly punching the unsuspecting victim, Andrew Howe, in the side of the head, causing catastrophic injuries.

Prior to trial, defense counsel filed, inter alia, a motion in limine styled: "Motion in Limine to Preclude Evidence of the Defendant's Postarrest Silence or Invocation of Right to Counsel." The motion stated that, following the defendant's arrest, the police reportedly read him his *Miranda* rights and, when asked if he understood those rights, the defendant remained silent. He also remained silent when asked routine booking questions. The motion further asserted that, when Detective James Crean, who was investigating the allegations in the captioned matter, approached the defendant in the holding area and explained that he wanted to speak to the defendant about the incident at Famous Footwear, the defendant stated, "I want a lawyer."

On February 28, 2018, the court held a hearing on, inter alia, the defendant's pretrial motions. On March 12, 2018, the trial court issued a comprehensive written "Ruling Re: Pretrial Motions" that, inter alia, addressed the defendant's motion in limine regarding his postarrest silence or invocation of his right to counsel. The trial court stated: "The defendant moved, on February 21, 2018, to preclude the state from offering as evidence the defendant's postarrest silence and/or invocation of his right to counsel. At the hearing on February 28, 2018, the *state indicated that it had no intention of offering such evidence.*

"The court concludes that no other action is necessary regarding this motion." (Emphasis added.)

At that February 28, 2018 hearing, the prosecutor told the court that he did not intend to offer evidence of the defendant's failure to cooperate with the booking process. With respect to the testimony of Detective Crean, the following colloquy occurred:

"The Court: No statements, simply that he didn't put his hands out when asked to?

"[The Prosecutor]: Yeah. Did he initially comply with your request to photograph his hands?

"The Court: [Defense counsel]?

"[Defense Counsel]: I don't think that goes to the [issue pursuant to *Doyle* v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976)].

"The Court: All right. So long as there are no statements, that's conduct, the conduct would be offered. All right.

"[The Prosecutor]: That's an accurate way of—

"[Defense Counsel]: Conduct.

"[The Prosecutor]: —summarizing what I intend to offer, conduct.

"[Defense Counsel]: —conduct other than silence.

"[The Court]: Understood."

On March 22, 2018, Detective Crean was called to testify before the jury during the state's case-in-chief. During the prosecutor's direct examination of Detective Crean, the following exchange occurred:

"[The Prosecutor]: And when you came into work that following Monday did anyone convey any information to you regarding the Famous Footwear robbery?

"[Detective Crean]: That would have been the 19th?

"[The Prosecutor]: Yes.

"[Detective Crean]: Yeah, on the 19th, yes, I was notified that [the defendant] was in our lockup. . . .

"[The Prosecutor]: What did that mean to you, though?

"[Detective Crean]: What they said was, is—

"[Defense Counsel]: Objection, Your Honor.

"The Court: Sustained.

"[The Prosecutor]: *Well, did you attempt to speak with— did you attempt to interview* [*the defendant*]*?*

"[Defense Counsel]: Objection, Your Honor. May we approach?

"The Court: Yes." (Emphasis added.)

The majority opinion categorizes this question as objectionable but not prosecutorial impropriety because (1) there was no formal court order that the prosecutor violated, (2) it may be inferred that, at the sidebar, the trial court sustained the objection to the question, (3) the question was not answered, (4) the trial court instructed the jury that unanswered questions are not evidence, and (5) it is unclear what the prosecutor's intent was in asking the challenged question. I respectfully disagree.

Our Supreme Court has stated that, "[i]n analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . The two steps are separate and distinct: (1)

whether [an impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial." (Footnote omitted; internal quotation marks omitted.) *State* v. *O'Brien-Veader*, 318 Conn. 514, 524, 122 A.3d 555 (2015). The defendant has the burden of satisfying both of these analytical steps. Id.

It "is well settled that prosecutorial disobedience of a trial court order, even one the prosecutor considers legally incorrect, constitutes improper conduct." *State* v. *Ortiz*, 280 Conn. 686, 704, 911 A.2d 1055 (2006). "In many cases, however, this black letter principle is easier stated than applied. A prosecutor's advocacy obligations may occasionally drive him or her close to the line drawn by a trial court order regarding the use of certain evidence." *State* v. *O'Brien-Veader*, supra, 318 Conn. 533.

Our Supreme Court has acknowledged that, "[e]ven when it is determined that a prosecutor has breached a trial court order, it can be difficult to distinguish between a mere evidentiary misstep and a potential due process violation. . . . Not every misstep by a prosecutor that exceeds the bounds of a trial court order rises to the level of prosecutorial impropriety that implicates a defendant's due process rights, thus requiring resort to the second step in the prosecutorial impropriety analysis." Id., 534.

"Whether a prosecutorial question or comment that runs afoul of a trial court order implicates a defendant's due process rights is a case specific determination. This determination turns on the degree to which the breach undermines a trial court's ruling that protects the integrity of the fact-finding process by restricting the admission of unreliable or unduly prejudicial evidence." Id.

Applying these principles to the present case requires resolution of three questions: (1) Was there a court order? (2) What interest was the trial court seeking to protect with its order? And (3) did the prosecutor's conduct undermine the trial court's ruling to such a degree that it can fairly be characterized as impropriety as opposed to an evidentiary misstep?

It is true that, on the formal motion in limine filed by the defense seeking to preclude evidence of the defendant's postarrest silence or invocation of his right to counsel, the court concluded that no action was necessary. This, of course, was predicated on the court's finding that, "[a]t the hearing on February 28, 2018, the state indicated that it had no intention of offering such evidence." But for this representation by the prosecutor, it is virtually certain that the trial court would have granted the motion in limine, as the defendant's custodial silence and "I want a lawyer" statement are classic invocations of *Miranda* rights. It seems to me wrong that a prosecutor can avoid the consequences of violating a court order by making a promise to a judge that obviates the need for a formal order—and subsequently breaking that promise. I would conclude that the situation with respect to the ruling on the motion in

limine is tantamount to a court order and that the prosecutor's question should be analyzed in that context.

Even, however, if one construes the written ruling on the motion in limine not to be a court order, as the majority does, there still was an order that was based on the February 28, 2018 colloquy. It is clear that the trial court directed that the only subject matter that the prosecutor could permissibly inquire about was the defendant's postarrest *conduct* in refusing to show his hands for photographing, as evidenced by the following colloquy:

"The Court: No statements, simply that he didn't put his hands out when he was asked to?

"[The Prosecutor]: Yeah. . . .

"The Court: All right. So long as there are no statements, that's conduct, the conduct would be offered. All right.

"[The Prosecutor]: That's an accurate way of—

"[Defense Counsel]: Conduct—

"[The Prosecutor]: —summarizing what I intend to offer, conduct.

"[Defense Counsel]: —conduct other than silence.

"The Court: Understood."

In my view, one cannot reasonably construe that exchange as anything other than the court's crystal clear ruling that the prosecutor's inquiry should be limited to the defendant's conduct and that he should not inquire about any statements the defendant may or may not have made postarrest. It was an order, and the prosecutor was required to comply with it.

So, what interest was the trial court trying to protect with this ruling? On the basis of the portion of Detective Crean's police report that was recited in the motion in limine, the defendant's only response when asked to be interviewed was, "I want a lawyer." The defendant had been arrested, was in police custody, and given his *Miranda* rights—that included his right to counsel. For almost one-half century it has been the law in our country that a person who exercises his or her right to silence or counsel will not be penalized for such exercise. *Doyle* v. *Ohio*, supra, 426 U.S. 610. The trial court's ruling sought to prevent the fundamentally unfair deprivation of due process that arises when one's assertion of the right to silence or counsel is used against him.

The question then becomes: Did the prosecutor's conduct undermine the court's ruling to a degree that rises to the level of impropriety? When Detective Crean sought to speak to the defendant about the incident at Famous Footwear, the defendant stated that he wanted a lawyer. In front of the jury, the prosecutor asked: "Well, did you attempt to *speak* with—did you attempt to *interview* this [defendant]?" (Emphasis added.) The most foreseeable response to this question would be for the witness to

testify in accordance with his police report, namely, that the defendant stated that he wanted a lawyer and was otherwise silent.

Now, as the majority correctly observes, the question was not answered and the defendant is not asserting that, in fact, a *Doyle* violation occurred. But that was not due to anything the prosecutor did. The whole purpose of the motion in limine and the trial court's direction to counsel was to avoid the situation that did occur—the jury being left to wonder: What exactly did the defendant say when the police tried to interview him?

It should not be too much to expect prosecutors to keep their word. When they make an express promise to a trial judge that is relied on by the court and opposing counsel, they should abide by it. In the present case, the prosecutor did not do that. I see that as improper.

I fully join in the majority's cogent analysis that this one improper question did not deprive the defendant of a fair trial. See footnote 5 of the majority opinion.

I concur in the judgment.

[1] *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).